### Reese v. City of Pittsburgh

*Daniel M. Berger,* for plaintiff.
*Mead J. Mulvihill, Jr.,* and *Alan Bouffard,* for defendant.

FLAHERTY, *J.,* July 16, 1976—Plaintiff has moved for inspection and production of the following items, inter alia:

"(e) All personnel records of the City of Pittsburgh and its Bureau of Police with reference to Police Officer Thomas Scherer, including records showing complaints and/or accusations against and disciplining of Officer Scherer, and also including all psychological, performance and other tests administered to the said police officer.

"(f) All records of the Internal Affairs Division of the Bureau of Police of the City of Pittsburgh with reference to Officer Thomas Scherer."

Counsel for defendant has advised that no psychological tests were administered, thus the sole issue before the court is whether plaintiff is entitled to the production and inspection of personnel records of the City of Pittsburgh and Bureau of Police and the records of the Internal Affairs Division of the Bureau of Police of the City of

Pittsburgh with reference to Officer Thomas Scherer. Defendant alleges that Rule of Civil Procedure 4011(d) is applicable in that the records of the Internal Affairs Division of the Bureau of Police in this instance are in "anticipation of litigation," and that, further, "executive privilege" protects defendant from disclosure of the records of the Internal Affairs Division of the Bureau of Police.

The complaint alleges injuries inflicted upon plaintiff by defendant's police officer, Thomas Scherer, as a result of an incident which occurred on the North Side of the City of Pittsburgh on December 10, 1975. It is alleged that plaintiff lost his right eye due to blackjack blows to plaintiff's head and face. It is alleged that defendant is responsible on the basis of the negligence of the police officer or the intentional conduct of the officer, further alleging that defendant, City of Pittsburgh, failed to train, instruct and discipline its police officers in a proper manner and permitted police officers having a propensity for violence to remain on the Pittsburgh Police Force.

Following the incident of December 10, 1975, a complaint was made to the Internal Affairs Division of the Bureau of Police of defendant, and the incident was investigated by the division. Disciplinary action against Officer Scherer was resolved by the officer submitting to a brief suspension. It would appear that the disciplinary action arising from the incident in question has, in fact, occurred.

The purpose of discovery is to furnish information to the litigant on any matter that will substantially aid ". . . in the preparation of the pleadings or in the preparation for trial of the case." Pa.

R.C.P. 4007(a). Pa. R.C.P. 4011 limits the foregoing, inter alia, as follows:

"No discovery or inspection shall be permitted which

". . .

"(c) relates to matter which is privileged. . .

"(d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial. . ."

The mere fact that a report was made in "anticipation of litigation" is insufficient to invoke the protection of 4011(d). The prohibition of discovery by Rule 4011(d) is operative only with respect to discovery in connection with the particular action in anticipation of which the investigation or report in question was initially made: Grew v. Brunner, 1 D. & C. 2d 754 (1955).

Likewise, the fact that a report may have some incidental use in litigation cannot bring the report within Rule 4011(d): Peters v. Sun Ray Drug Co., 37 D. & C. 2d 612, 614-615 (1966); DeLeo v. Kane, 29 D. & C. 2d 66, 70 (1962); Hirsch v. Philadelphia, 17 D. & C. 2d 461 (1958):

"The test applied by our courts is not whether the information obtained by a party may be used in subsequent litigation, nor whether the report was obtained by a party after the incident, which gave rise to the litigation, but whether the information was obtained specifically for the purpose of preparing for litigation." Hirsch, at 465.

It is the fact that the reports *were made* in anticipation of litigation and *not* the fact that the reports *could be used* in subsequent litigation which

determines whether Rule 4011(d) is applicable. Peters, supra. (Emphasis supplied.)

Pa. R.C.P. 4011(d) clearly does not find applicability in the present case. The Manual of Rules, Regulations and Procedures of the Internal Affairs Division of the City of Pittsburgh of the Bureau of Police states that the purpose of the Internal Affairs Division is to investigate alleged charges of police misconduct to determine what action, if any, should be brought against police officers for purposes of disciplinary action. Whatever records are contained in the Internal Affairs Division would relate to Police Trial Board proceedings, and not to possible civil litigation; thus, whatever information was obtained was not obtained specifically for the purpose of preparing for the instant litigation.

The court is left with the question of whether "Executive Privilege" protects the requested information from disclosure. Defendant has cited no statutory authority for the existence of such a privilege, but a review of the law would indicate that, under certain circumstances, such a privilege does exist. Simply stated: "Executive privilege is the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973). Certainly, "Executive Privilege" is not, and should not be, an absolute privilege. If such were the case, it would provide the opportunity for the most extreme tyranny and despotism; thus, the invocation of this somewhat less than well defined privilege should be viewed cautiously by the judiciary lest such a "privilege" become a vehicle for the subversion of individual rights. The right of

a litigant to relevant information in the preparation of the litigant's case, however, is a fundamentally important right to insure the accomplishment of justice. In Wood v. Breier, 54 F.R.D. 7 (E.D. Wis. 1972), Chief Judge Reynolds of the United States District Court for the Eastern District of Wisconsin, with respect to a similar issue involving the Federal Rules of Civil Procedure, said:

"Rule 26(c) of the Federal Rules of Civil Procedure grants the court the power to suppress discovery. However, in a case such as this the arguments for suppression must be of such great weight as to overcome not just one but two major congressional and judicial policy decisions. The first of these is the broad federal mandate for discovery in all civil actions. This mandate reflects the decision that 'a trial [should be] less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' The importance of this policy is reflected in the decision that discovery should only rarely be suppressed.

"Only strong public policies weigh against disclosure.

" 'The principle favoring full access by the courts and litigants to relevant information, in the absence of strong competing considerations, is an important foundation for the achievement of justice by the courts in individual lawsuits. This principle is national policy of high rank, wholeheartedly endorsed and furthered by Congress. In the absence of a specific prohibition against disclosure of judicial proceedings, such as Congress set forth in some statutes, clear and strong indication is required before it may be implied that the policy of prohibition is of such force as to dominate the

broad objective of doing justice. . . .' [Freeman v. Seligson, 132 U.S. App. D.C. 56, 405 F. 2d 1326, 1348 (1968)].

". . .

"Defendant Breier's motion for suppression is premised on what is commonly termed executive privilege, a privilege claimed by a governmental body when it fears that discovery of its confidential information will seriously impair its ability to function. It is a privilege which should not be lightly invoked by the Government, for by invoking the privilege the case before the court may become a mockery with 'half-informed litigants who sometimes get justice, if at all, by accident. . . .' Nor is the Government's assertion of the privilege conclusive upon the decision of the Government, for while such an assertion is entitled to great respect . . . it is the duty of the Court to make an independent determination of whether a privilege does exist.' This judicial determination, however, cannot be made in abstract; rather it must be done on a case by case ad hoc basis by balancing the applicable public policies and the material sought to be discovered in each individual case.

"Given the case-by-case balance required, stare decisis carries less authority than it normally would. Nevertheless, it is important to note that prior precedent is clearly in favor of discovery in the case at hand. First, the great majority of cases which have addressed themselves to the propriety of discovery of law enforcement investigation have found that while in general discovery should be barred from on-going investigations, once the investigation and prosecution have been completed discovery should be permitted. Even this balance, however, is not absolute and there may be occa-

sions where discovery of a particular on-going investigation would be proper."

In Frankenhauser v. Rizzo, supra, Judge Becker said:

"We agree with the principles enunciated in the cases cited to us by both parties. The teaching of those cases is that when executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action. Needless to say, the balancing task will often be difficult and the ingredients of the test will vary from case to case. In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their indentities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from

other sources; and (10) the importance of the information sought to the plaintiff's case."

Judge Becker went on to say he did not believe that ". . . disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police."

This court, in Marsteller v. Wecht, 546 January Term, 1973, in an opinion written by Judge McLean, rejected the existence of an "Executive Privilege" protecting records of the Internal Affairs Division of the Bureau of Police in a defamation action.

There is no on-going investigation, and, to argue that a suit involving the loss of one's eye is a frivolous action is not worthy of comment. Weighing the rights of the individual litigant in this case against the asserted public policy, the scales tip heavily in favor of the right of the individual litigant to relevant information in aid of the preparation of the litigant's case. The concept of justice is a composite of the rights of individuals, and, the concept, taken alone, is meaningless unless it applies to individuals, such as this litigant, and when the balancing test is applied to this plaintiff, his rights greatly outweigh the alleged need for confidentiality asserted under these circumstances.

## ORDER

And now, July 16, 1976, upon consideration of plaintiff's motion for inspection and production, defendant is directed to produce for inspection and/or copying, all personnel records of the City of Pittsburgh and its Bureau of Police with reference

to Police Officer Scherer, including records showing complaints and/or accusations against and disciplining of Officer Scherer, and all records of the Internal Affairs Division of the Bureau of Police of the City of Pittsburgh with reference to Officer Thomas Scherer.